# Richmond.

## NALLE AND WIFE v. FARISH AND OTHERS.

### FEBRUARY 15, 1900.

1. MARRIED WOMEN—*Common Law Lands—Executory Contracts.*—Prior to the "Married Women's Act," a married woman was without power to contract to sell her lands, and such contract cannot be enforced by a court of equity.

2. SUBROGATION—*Volunteers—Payment of Vendor's Lien—Case in Judgment.*—The doctrine of subrogation does not depend on the contractual relations of the parties to be affected, but is broad enough to include every instance in which one party who is not a volunteer pays a debt for which another is primarily liable, and which, in equity and good conscience, should be discharged by the latter. In the case in judgment, the party primarily liable was a married woman, without power to contract, but the payment was of a debt which was a vendor's lien on land conveyed to her, and was made by one who purchased a part of the land from one having no authority to sell, but who paid the purchase price to the holder of the lien. Under these circumstances, he is entitled to be subrogated to the rights of the holder of the lien, at least to the part of the land so purchased.

Appeal from decrees of the Circuit Court of Culpeper county pronounced June 25, 1898, and November 19, 1898, in a suit in chancery, wherein the appellants were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*G. D. Gray,* for the appellants.

*Hay & Jeffries,* for the appellees.

RIELY, J., delivered the opinion of the court.

Andrew Keyser, having purchased, on August 16, 1873, certain real estate in Culpeper county, for the sum of $2,220, at a sale made thereof under a decree of the Circuit Court of said county, entered in the suit of *Bickers* v. *Farish*, pending therein, and made the cash payment of one-third of the purchase money, executed a writing by which he bound himself to convey the right and title to the said real estate to his daughter, Sallie J. Nalle, the wife of Joseph Nalle, who resided in the State of Texas, when the land was paid for, upon the condition that she pay the three bonds given by him for the deferred payments.

James P. Thomas and Lucy E. Thomas, his wife, the latter being the sister of Joseph Nalle, were put in possession of the land, but upon what agreement, or under what circumstances, does not clearly appear. It does appear, however, that when the last bond fell due, Joseph Nalle, having paid the first two bonds, agreed to convey the land or have it conveyed to his sister, provided she would pay the last bond. In order to raise the money for this purpose she and her husband sold 106¾ acres of the land to James M. Shadrach for the sum of $714.45, who, out of the same, paid to F. M. Latham, commissioner of the court, on the said bond for Thomas, on April 3, 1878, the sum of $350, and on May 27, 1878, the sum of $282.92 in full of the said bond. Shadrach paid to Thomas the balance, to wit, $81.53, of the purchase money for the land sold to him by Thomas and wife, and they, on May 28, 1878, made a deed to him for the same. Commissioner Latham receipted the bond, so as to show that it was paid by Shadrach for Thomas, transmitted it to Nalle and wife, and made a deed to Mrs. Nalle for the land bought by Andrew Keyser, her father, which he acknowledged and lodged in the proper clerk's office for record. Shadrach took possession of the part of the land thus sold and conveyed to him, held it as long as he lived, and his widow and heirs have

continued in possession of it ever since, altogether about eighteen years.

Nalle and wife, not being aware that Commissioner Latham had made a deed to the latter for the land bought by Andrew Keyser and lodged it in the clerk's office in 1896, brought their suit in the Circuit Court of Culpeper county to obtain a conveyance thereof. In this suit the widow and heirs of Shadrach filed their petition to have the title to the 106¾ acres of the land made to them, in pursuance of the purchase thereof by him, in order to perfect their title thereto, or to have the money he had paid therefor refunded by Mrs. Nalle, and the land subjected to its payment. The court below decreed that the title be so conveyed.

Nalle and wife contest the right of the widow and heirs of Shadrach to a conveyance of the part of the land bought by him upon the ground that they made no contract with him for its purchase, and, if they had, it was her land, and she was incompetent to make a valid contract for its sale, and they also deny their right to have the money paid by Shadrach to the commissioner refunded.

Mrs. Nalle, being a married woman, was not competent to make a valid contract of sale of the land, and the court was without power to decree a conveyance to the heirs of Shadrach founded upon any contract made for its sale to him by her, or by her husband as her agent. *Chilhowie Iron Co.* v. *Gardiner*, 79 Va. 305; *Hoover* v. *Calhoun*, 16 Gratt. 109; *Shenandoah Valley R. Co.* v. *Dunlop and Wife*, 86 Va. 346; and *Wynn* v. *Louthan*, 86 Va. 946.

She was, however, not entitled to a conveyance of the land by the court through its commissioner until all the purchase money was paid, and there existed upon the land the vendor's lien for the purchase money until it was all paid. The very writing from her father, under which she claims the right to the land, makes her alone answerable for the deferred payments. It was thereby

made her debt. The last bond was paid by Shadrach, not as a volunteer, but under a contract with Thomas to do so, to whose wife Joseph Nalle had promised to have the land conveyed, if she would pay off the last bond, and who had sold part of the land to Shadrach to raise the money to pay the bond.

While there was not any contract proved on the part of Nalle and wife which the court could specifically enforce, nor had it the power to decree against Mrs. Nalle the repayment of the money paid by Shadrach, yet he would be entitled, if he were living, to be substituted to the lien upon the land for the bond which he paid off, and in the interest of right and justice to have it enforced at least against the land which he purchased, and this right continues for the benefit of his estate.

The doctrine of subrogation, which does not depend upon contractual relations between the parties to be affected by it, is broad enough, it is said, to include every instance in which one party, who is not a volunteer, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. Sheldon on Subrogation, sec. 1; *Harnsberger* v. *Yancey*, 33 Gratt. 527; *Gatewood* v. *Gatewood*, 75 Va. 407; and *Price* v. *Davis*, 88 Va. 939.

Its application in the case before us will not work injustice to anyone, and is called for by the strongest principles of equity and good conscience.

For the error in decreeing the conveyance of the parcel of land of 106¾ acres to the widow and heirs of Shadrach, instead of substituting his estate for the amount paid by him in discharge of the said bond of Andrew Keyser to the lien thereon for its payment, and decreeing the sale of the land therefor if the same be not paid within a reasonable time, the decree of the Circuit Court must be reversed, and this court will enter such decree as it ought to have entered.

*Reversed.*